IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA )
)
v. )
) 1:18-cr-00307 (LMB)
JORGE MARIO MENDEZ FERNANDEZ, )
)
Defendant. )

## MEMORANDUM OPINION

Before the Court is Defendant's Motion to Dismiss Indictment [Dkt. No. 20]. For the reasons stated in open court and further developed below, defendant's motion has been denied.[1]

## I. BACKGROUND

Jorge Mario Mendez Fernandez ("defendant") is a citizen of Guatemala who entered the United States without authorization in February 1993. After being taken into custody by an officer of the Immigration and Naturalization Service ("INS"), defendant was personally served with an order to show cause printed in both English and Spanish and read to defendant in Spanish. The order alleged that defendant was not a U.S. citizen or national and had entered the United States without being inspected by immigration authorities. It advised defendant that he was required to appear for a hearing before an immigration judge; however, in the blanks left for the time and place of the hearing, the issuing officer wrote: "To be calendared and notice provided by the Executive Office for Immigration Review." Finally, the order advised defendant that he was required to provide an address and telephone number where he could be contacted

---

[1] After the Court orally denied defendant's motion on October 26, 2018 [Dkt. No. 28], defendant waived his right to trial by jury [Dkt. No. 29] and proceeded to a stipulated bench trial [Dkt. No. 30]. The Court found defendant guilty of illegal reentry after deportation [Dkt. No. 31], sentenced him to time served without any period of supervised release, and ordered him to pay the $100 mandatory special assessment.

and to update the immigration court should his contact information change; that notice of a hearing would "be mailed to the address provided"; and that failure to appear could result in an order of deportation.

Defendant never provided an address or telephone number and never received notice of the deportation hearing held in April 1993. Although defendant failed to appear, the immigration judge concluded that no notice was required under the governing statute and proceeded to adjudicate the case <u>in absentia</u>. Based on uncontested information provided by the government, the immigration judge found that defendant's deportability had been established by "clear, convincing, and unequivocal evidence" and ordered that defendant be deported.

Defendant had no further contact with immigration authorities for over 16 years. In June 2009, he was taken into custody and removed from the country based on the 1993 deportation order. He returned to the United States at some time after being deported and in August 2016 was found in the Eastern District of Virginia. On August 16, 2018, a grand jury returned a one-count indictment charging him with unlawful reentry under 8 U.S.C. § 1326(a).[2]

Defendant moved to dismiss the indictment, arguing that the immigration judge lacked jurisdiction to issue the 1993 deportation order because the order to show cause that defendant received had failed to specify a time and place for the hearing. As a result, defendant argues that his 2009 deportation is void and cannot serve as the basis for a prosecution for unlawful reentry.

---

[2] If an alien who was previously "excluded, deported, or removed" from the United States later enters or attempts to enter the United States without the Attorney General's express consent, he may be prosecuted for unlawful reentry, a felony punishable by up to two years' imprisonment. 8 U.S.C. § 1326(a).

He further argues that because the underlying deportation order is void, he necessarily can satisfy the required showings for a collateral attack under 8 U.S.C. § 1326(d).

## II. ANALYSIS

Under the Immigration and Nationality Act ("INA") as it existed in 1993, any alien who "entered the United States without inspection" was subject to removal. 8 U.S.C. § 1251(a) (1988 & Supp. V 1993). To initiate removal proceedings, immigration authorities served the suspected alien with an "order to show cause." Id. § 1252(b)(a)(1). That order was required to specify, inter alia, (i) the "nature of the proceedings against the alien," (ii) the "charges against the alien and the statutory provisions alleged to have been violated," (iii) that "the alien must immediately provide (or have provided) the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted"; (iv) that the alien must update the Attorney General in the event his contact information were to change; and (v) that no notice to appear at a hearing will be issued if no address is provided. Id. § 1252b(a)(1), (c)(2). Separately, the INA required authorities to give the suspected alien written notice of "the time and place at which [removal] proceedings will be held" and "the consequences" of failing to appear, including being ordered deported in absentia. See id. § 1252b(a)(2), (c)(1). The notice to appear could be served as part of the order to show cause "or otherwise." Id. § 1252(a)(2)(A).

Congress authorized the Attorney General to promulgate regulations governing removal proceedings, see 8 U.S.C. § 1252(b) (1988 & Supp. V. 1993), and in 1993, those regulations provided that jurisdiction vested with an immigration court only upon the filing of a "charging document," 8 C.F.R. § 3.14(a) (1993). "Charging document," in turn, was defined to include the "Order to Show Cause." 8 C.F.R. § 3.13. Echoing the INA, the regulations stated that every order to show cause must specify (among other things) the nature of the proceedings, the charges

3

against the alien, the address of the office of the immigration judge, and the requirement that the alien provide the immigration judge a current address and telephone number. See id. § 3.15(b). The regulation did not require that the order to show cause itself include the date and time for the hearing to be held before an immigration judge.

To secure a conviction for illegal reentry after removal, "the government must prove, as an element of the offense, the defendant's prior removal." United States v. Moreno-Tapia, 848 F.3d 162, 165 (4th Cir. 2017). Because the prior removal is an element of the crime, due process requires that a defendant be given the opportunity to mount a collateral attack against the underlying deportation order. United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987). For such a collateral attack to succeed, the defendant must show that (i) "he exhausted any administrative remedies that may have been available"; (ii) "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review"; and (iii) "the entry of the deportation order was fundamentally unfair." United States v. El Shami, 434 F.3d 659, 663 (4th Cir. 2005) (citing 8 U.S.C. § 1326(d)). If a defendant makes all three showings, "the illegal reentry charge must be dismissed as a matter of law." Id.

### A. Jurisdiction

Both parties focus their arguments on whether the immigration judge had jurisdiction to order defendant deported in 1993. Defendant argues that jurisdiction was lacking because the notice he received did not include a time and a place for the hearing. He supports this argument by pointing to Attorney General-promulgated regulations addressing when jurisdiction vests before an immigration judge as well as to the Supreme Court's decision in Pereira v. Sessions, 138 S. Ct. 2105 (2018). The Government disagrees, arguing that in 1993 neither the INA nor its implementing regulations created a jurisdictional requirement that the notice an alien received

4

had to include the time and place for the hearing and that Pereira was concerned only with an unrelated question of statutory interpretation.

Several courts have addressed these arguments. For example, in United States v. Virgen-Ponce, 320 F. Supp. 3d 1164 (E.D. Wash. 2018), the district court ruled that a notice to appear lacking a time and place failed to confer jurisdiction on the immigration judge and that Virgen-Ponce's deportation order was invalid as a result. Id. at 1165-66. The court did not require exhaustion of remedies or a particularized showing of prejudice, ruling that no prosecution for illegal reentry after deportation can proceed if the underlying deportation order is void ab initio. See id. at 1166.[3] Other courts, while finding that the notice to appear was defective for failure to include the time and date of the hearing, have denied defendants' motions to dismiss on other grounds.[4] At least one district court has rejected the argument that such notices are defective,

---

[3] See also United States v. Zapata-Cortinas, No. 5:18-cr-00343, 2018 WL 4770868, at *1, *4-5 (W.D. Tex. Oct. 2, 2018) (dismissing an indictment for illegal reentry after deportation because the defendant had been served a notice to appear that did not specify a time or place for the hearing). In Zapata-Cortinas, the court concluded that jurisdiction does not vest with the immigration judge if no appropriate charging document is filed and that the time and place of the hearing is essential for every notice to appear. Id. at *2-3. The district court also ruled that the defendant was not required to exhaust administrative remedies, that his removal deprived him of judicial review and was fundamentally unfair, and that the prejudice requirement was satisfied because "but for the immigration court's mistaken belief that it was vested with jurisdiction," the defendant would not have been removed. Id. at *5.

[4] See, e.g., United States v. Lira-Ramirez, No. 6:18-cr-10102, 2018 WL 5013523 (D. Kan. Oct. 15, 2018) (agreeing that a notice to appear "was clearly defective" because it "did not include a specific date and time to appear" but denying the defendant's motion because he had waived his right to appeal any deportation order); United States v. Veloz-Alonzo, No. 1:18-cr-00202 (E.D. Ohio Sept. 18, 2018) (same).

5

though in a bare three-page opinion.[5] Still others have ruled that statutory defects are not jurisdictional and can be cured by subsequent notice.[6]

None of these cases is directly on point because all of them involve deportation proceedings initiated after April 1997, when the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") went into effect. IIRIRA effected a sea change in "the way deportation proceedings are commenced." See Martinez-Garcia v. Ashcroft, 366 F.3d 732, 734 (9th Cir. 2004). Before April 1997, the "charging document" that vested jurisdiction with the immigration judge was the order to show cause. See 8 C.F.R. §§ 3.13, 3.14(a) (1993). Neither the INA nor the implementing regulations then in force required that the order to show cause had to specify the time and place of the hearing. See 8 U.S.C. § 1252b(a)(2)(A) (1988 & Supp. V 1993); 8 C.F.R. § 3.15(b) (1993). Although authorities had the option to include the time and place for the hearing in the order to show cause, they could also provide the notice through other means. See 8 U.S.C. § 1252(b)(a)(2)(A) (written notice must be provided "in the order to show cause or otherwise" (emphasis added)). It was only after IIRIRA, when the order to show cause and notice to appear were consolidated into a single notice, that the time and place of the hearing even arguably became a jurisdictional requirement. In short, when defendant encountered

---

[5] United States v. Hernandez-Ruiz, No. 1:17-cr-00226 (N.D. Ga. Sept. 21, 2018).
[6] See, e.g., United States v. Ibarra-Rodriguez, No. 5:18-cr-00190, 2018 WL 4608503 (W.D. Okla. Sept. 25, 2018) (recognizing that the notice to appear was "statutorily defective" but concluding that any defect had been cured because the defendant received actual notice of his hearing and was granted a continuance to obtain counsel); United States v. Ornelas-Dominguez, No. 5:18-cr-00110 (C.D. Cal. Aug. 10, 2018) (similarly concluding that though statutorily defective, a notice to appear lacking a date and time could be cured by a subsequent notice of hearing and personal appearance at the deportation proceeding).

immigration authorities in 1993, there was no jurisdictional requirement of the type courts have confronted with respect to post-IIRIRA orders.

## B. Exhaustion and Judicial Review

Because defendant's motion is a collateral attack on the underlying deportation order, the Court must first decide whether he has exhausted administrative remedies and was deprived of a meaningful opportunity to seek judicial review. See 8 U.S.C. § 1326(d)(1)-(2). Defendant has satisfied these requirements.

The Fourth Circuit's reasoning in El Shami bolsters the Court's conclusion. In El Shami, the defendant had provided the INS with an address of record, but the government never sent El Shami written notice of the hearing it scheduled. See 434 F.3d at 661-62. As such, El Shami did not appear, and the immigration judge ordered him deported in absentia. Id. He was deported a year later and subsequently found in the United States. Id. In El Shami's appeal of his resulting conviction of illegal reentry after deportation, the Fourth Circuit held that because he had not received notice of the hearing, he "was never informed of his right to appeal to seek administrative and judicial review"—indeed, he "did not know either the existence or the nature of the immigration judge's ruling." Id. at 663-64. Accordingly, the court concluded that the failure to notify El Shami of his hearing had resulted in "a complete deprivation of administrative and judicial review" and that he could not be faulted for failure to exhaust. See id. at 664.

Pereira also supports the Court's conclusion. In Pereira, a Brazilian citizen in the United States was served a notice to appear advising him that he could be removable, that a hearing was to be held, and that there were consequences for failure to appear. 138 S. Ct. at 2112. The notice stated only that a hearing would be held "on a date to be set at a time to be set." Id. (emphasis

7

omitted). A hearing was ultimately scheduled more than a year later; although Pereira had provided his address, the immigration court did not mail a notice of the hearing to that address. Id. As a result, Pereira did not appear. Id. The immigration judge ordered him removable in absentia, but Pereira—unaware of the judge's order—remained in the United States until he was again detained by immigration authorities in 2013. Id. Pereira applied for cancellation of removal, a discretionary remedy available to some removable noncitizens who have been physically present in the United States for a continuous period of at least ten years. Id. at 2110-12; see 8 U.S.C. § 1229b(b)(1). At issue in Pereira was the "stop-time rule," which provides that the term of continuous presence must be deemed to end when, among other things, "the alien is served a notice to appear under section 1229(a)." 138 S. Ct. at 2110-12; see 8 U.S.C. § 1229b(d)(1). Because the notice served on Pereira did not specify "[t]he time and place at which the proceedings will be held," he argued that he had not been "served a notice to appear under section 1229(a)" and that consequently the stop-time rule should not apply. The Supreme Court agreed, holding that "to trigger the stop-time rule, the Government must serve a notice to appear that, at the very least, 'specif[ies]' the 'time and place' of the removal proceedings." Pereira, 138 S. Ct. at 2113-14 (alteration in original) (quoting 8 U.S.C. § 1229(a)(1)). The Court's opinion was based not only on statutory construction but also on "common sense":

> If the three words "notice to appear" mean anything in this context, they must mean that, at a minimum, the Government has to provide noncitizens "notice" of the information, i.e., the "time" and "place," that would enable them "to appear" at the removal hearing in the first place. Conveying such time-and-place information to a noncitizen is an essential function of a notice to appear, for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings.

Id. at 2115.

Unlike the aliens in Pereira and El Shami, defendant did not provide an address when he was served with the order to show cause and failed to provide an address thereafter, despite having received clear notice that he was legally required to provide contact information and that all notices would "be mailed only to the last address provided." Moreover, under the INA as it existed in 1993, written notice of the hearing was not required "if the alien . . . failed to provide the address required." 8 U.S.C. § 1252b(a)(2) (1988 & Supp. V 1993). The Court is mindful that the law frequently imposes on parties the duty to maintain accurate, up-to-date contact information, and equally mindful of the possibility that a noncitizen could attempt to shield himself from immigration enforcement by deliberately withholding contact information.[7]

Nonetheless, the Court concludes that defendant's failure or inability to provide an address does not alter the El Shami analysis of the exhaustion and judicial review requirements. El Shami does not turn on the blameworthiness of the defendant's conduct. Rather, it stands for the simpler proposition that because El Shami never received notice of his hearing, he "was never informed of his right to appeal to seek administrative and judicial review," and by the time he learned he had been ordered deported, "the time for seeking review had expired." 434 F.3d at 664. The same reasoning applies here. The notice defendant received detailed his options were he to be ordered deported in absentia: judicial review would be available only upon a petition for

---

[7] This case does not present an occasion to rule on the due process implications of distinct factual circumstances. For example, one can readily imagine a case where the initial notice given to the alien includes a date and time for the hearing but where the alien fails to provide contact information and thus never receives notice of the immigration court's subsequent change of the hearing date or time. The Court does not decide whether an order deporting such an alien in absentia would violate fundamental fairness. Nor does the Court opine on the situation in which an alien attempts to provide an address but does not receive notice of the hearing due to an error, whether typographical or ministerial, on the part of the immigration authorities.

9

review filed within 60 days of the deportation order, and administrative review would lapse after 180 days. Although the notice stated that defendant could "file a motion to reopen at any time after the date of the order," such a motion was only available to an alien who could show he "had provided [his] address and telephone number."[8] Considering that defendant did not learn he had been ordered deported for over 16 years, he was identically situated to El Shami.

Despite the defendant's failure to exhaust judicial or administrative remedies within the 60- or 180-day time periods, under § 1326(d), "failure to exhaust administrative remedies or seek judicial review ... will be excused ... where that failure is itself the product of a procedural flaw in the immigration proceeding." Moreno-Tapia, 848 F.3d at 169. Here, the very challenge defendant brings—that the notice he received did not tell him where or when to show up to contest his removability—is also why he did not learn of his removal order until long after he could do anything to challenge it. Under these circumstances, exhaustion was neither practicable nor required. Therefore, he is permitted to raise this collateral attack.

## C. Fundamental Unfairness

"To demonstrate fundamental unfairness, 'a defendant must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'" El Shami, 434 F.3d at 664 (quoting United States v. Wilson, 316 F.3d 506, 510 (4th Cir. 2003)). Here, "the due process analysis is the due process [afforded]

---

[8] The Government suggests defendant could have requested an immigration judge to reopen his proceeding, pointing to an INA provision in force in 1993 allowing an alien to file a motion to reopen "at any time if the alien demonstrates that the alien did not receive notice in accordance with subsection (a)(2) of this section." See 8 U.S.C. § 1252b(c)(3)(B) (1988 & Supp. V. 1993). But that provision likewise applied only to an alien who did not receive notice "in accordance with subsection (a)(2)," a provision that made clear that "a written notice shall not be required ... if the alien has failed to provide the address required." Id. § 1252a(a)(2). The provision in force today is similarly limited to those who provided an address. See 8 U.S.C. § 1229a(b)(5)(B), (C)(ii).

a criminal defendant, not the due process to which the alien was entitled at the time of the deportation proceedings." United States v. Silva, 313 F. Supp. 3d 660, 676 (E.D. Va. 2018) (emphasis omitted). Although defendant failed to comply with the requirement that he provide an address to which notice could be sent, he has demonstrated that his due process rights were violated by not being given proper notice of the deportation hearing; however, he has failed to show that he suffered prejudice as a result.

"For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'" Fuentes v. Shelvin, 407 U.S. 67, 80 (1972) (quoting Baldwin v. Hale, 68 U.S. (1 Wall.) 223, 233 (1863)). To be sure, "due process is flexible and calls for such procedural protections as the particular situation demands," Morrissey v. Brewer, 408 U.S. 471, 481 (1972), but adequate notice remains an unshakeable aspect of the constitutional minima that due process requires.

The Government argues that although it did not inform defendant of the time and place of his hearing, it was not required by statute or regulation to do so. Undeniably, due process does not require actual notice of every bit of information related to an administrative proceeding; all that is required is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. Still, it remains "common sense" that "[c]onveying . . . time-and-place information to a noncitizen is an essential function of a notice to appear." Pereira, 138 S. Ct. at 2115. "[W]ithout it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings." Id. Unlike El Shami and Pereira, both of whom had provided contact information, here defendant did not provide such information; however, shifting the burden onto

the suspected alien virtually guarantees that any alien without an address will be ordered deported in absentia. Fundamental fairness demands more. Defendant's failure or inability to provide an address does not justify a departure from what the Fourth Circuit has already held: "Although [defendant] was aware of the charges against him, the INS's failure to provide notice of the hearing deprived him of the opportunity to contest those charges or otherwise seek relief from deportation from the administrative tribunal," and defendant has therefore "satisfie[d] the due process prong of the fundamental unfairness requirement." El Shami, 434 F.3d at 665.

Nonetheless, it is not enough to show a due process violation: Defendant must also show that he was prejudiced by such a violation, meaning that "but for the errors complained of, there was a reasonable probability that he would not have been deported." El Shami, 434 F.3d at 665. If the noncitizen concedes he was subject to deportation and not eligible for any form of discretionary relief, his collateral attack must fail; if on the other hand he could have been eligible for discretionary relief, he may demonstrate prejudice by showing a reasonable probability that such relief would have been granted. Id. at 665-66.

Defendant attempts to skirt the prejudice requirement by arguing that "but for the immigration court's mistaken belief that it was vested with jurisdiction[,] . . . [d]efendant would not have been removed," see United States v. Zapata-Cortinas, No. 5:18-cr-00343, 2018 WL 4770868, at *5 (W.D. Tex. Oct. 2, 2018). Defendant's jurisdictional argument fails for the reasons stated above. The only way defendant can prevail on his collateral attack of the pre-IIRIRA deportation order is by showing that he "had a reasonable probability to avoid deportation," for instance by applying for voluntary departure. See United States v. Itehua, No. 3:17-cr-00119, 2018 WL 1470250, at *4 (E.D. Va. Mar. 26, 2018); see also Moreno-Tapia, 848 F.3d at 171 (holding that to show prejudice, a defendant must demonstrate a reasonable

probability that he would not have been deported based on "the law as it stood at the time of the immigration proceedings").

Defendant has made no such showing. Even after the Court specifically asked the parties to provide supplemental briefing addressing the prejudice issue [Dkt. No. 23], defendant argued only that the notice he received suffered from a fatal flaw and that he was necessarily harmed as a result. This amounts at best to a "generalized showing of prejudice," which under circuit precedent is insufficient to sustain a collateral attack. United States v. Lopez-Collazo, 824 F.3d 453, 462 (4th Cir. 2016). Moreover, during oral argument, defense counsel effectively conceded that defendant had no basis to contest deportation in 1993. Under these facts, defendant has failed to show that he was prejudiced by the due process defect in his underlying deportation proceeding.

## III. CONCLUSION

This case illustrates the grave due process concerns that arise when a deportation order stemming from a notice to appear that fails to specify a time or place for the hearing, entered in the defendant's absence and without the defendant's knowledge, is later used as the basis for a felony prosecution for unlawful reentry after deportation. Nonetheless, because defendant has not made the required particularized showing of prejudice, his motion has been denied.

Entered this 13th day of November, 2018.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

13